60 F.3d 843
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Herbert H. ADAMS, Jr., Petitioner,
v.
DEPARTMENT OF the TREASURY, Respondent.
 No. 95-3306.
 United States Court of Appeals, Federal Circuit.
 June 19, 1995.
Rehearing Denied Aug. 1, 1995.
 
 Before RICH, NIES, and MICHEL, Circuit Judges.
 MICHEL, Circuit Judge.
 
 DECISION
 
 1
 Herbert H. Adams, Jr. petitions for review of the December 19, 1994 initial decision of the Administrative Judge (AJ) dismissing as untimely his appeal to the Merit Systems Protection Board (MSPB or Board) alleging that his December 31, 1974 resignation from the position of U.S. Customs Inspector was involuntary. Docket No. BN-0752-94-0274-2-1. The initial decision became the final decision of the Board on February 13, 1995, when the full Board declined to reopen and reconsider the initial decision. Because the Board's finding that Adams failed to show good cause for his delay of nearly twenty years in filing his appeal is not arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, or unsupported by substantial evidence, and because Adams was not entitled to notice of appeal rights from his resignation which he initiated voluntarily, we affirm.
 
 BACKGROUND
 
 2
 On December 31, 1974, Adams submitted a resignation on a Standard Form 52, "Request for Personnel Action," to the United States Customs Service, an agency within the Respondent Department of the Treasury. On that form he stated that he was resigning from his position because of the impending break-up of his marriage and his consequent inability to concentrate on his duties. He stated that his resignation was effective "immediately."
 
 
 3
 The evidence in the record of the events surrounding Adams' resignation over twenty years ago is scarce. There is a letter discussing Adams' resignation dated January 2, 1975 addressed to the Acting District Director, Bridgeport, Connecticut, and bearing the signature of Adams' supervisor, Port Director Robert Curley, who died approximately one month before Adams filed his appeal to the MSPB. The letter states that Adams raised the issue of his resignation with Curley on the morning of December 31, 1974, that Curley advised him against resigning, but that Adams left all his equipment, badge, keys, etc., in the office with the resignation. The letter further recounts a telephone conversation between Adams and Curley on January 2, 1975, in which Adams asked that the resignation not be forwarded until he investigated the possibility of obtaining a leave of absence or a "humanitarian transfer," and states Curley's belief that the agency should carry Adams on its rolls until such time as his accrued leave was exhausted or until some type of personnel action was finally approved. Adams, also according to the letter, told Curley that he would be mailing his key to the front door that morning, i.e., January 2, 1975. The letter concludes that Curley would be sending a copy of it to Adams in order to keep him "abreast of his situation." Adams acknowledged receiving this letter.
 
 
 4
 There is also an agency record of Adams' resignation. On January 15, 1975, the Boston Personnel Office of Customs processed a Standard Form 50, "Notice of Personnel Action," which effected Mr. Adams' resignation as of December 31, 1974, as per his request.
 
 
 5
 Following Adams' departure, the agency re-employed him in the agency's San Ysidro, California, office on October 6, 1975 in the temporary position of Customs Inspector, GS-5, not to exceed one year. When the agency terminated Adams on August 24, 1976, he filed an appeal on October 26, 1976, contesting the removal with one of the Board's predecessors, the Federal Employees' Appeals Authority (FEAA). The FEAA dismissed his appeal for lack of jurisdiction, concluding that, as a temporary limited employee, Adams did not have the right to contest his removal. Adams took his grievance with the agency to his congressional representative, and continued to raise his dispute with the agency, the Department of Labor, the Civil Service Commission, and the Office of Personnel Management.
 
 
 6
 Adams first appealed his resignation, contending that the agency "illegally accepted" his resignation over his objections, in 1994, when he was referred to the Board. The AJ dismissed Adams' appeal of his resignation as untimely filed, rejecting Adams' allegations of agency impropriety because Adams offered no explanation of what he did after receiving Curley's letter and Adams failed to allege that he took any other action to rescind his resignation, such as reporting to work or calling the Regional Personnel Office to retrieve his resignation. The AJ also rejected Adams' argument that he had good cause for not filing an appeal earlier because of the agency's failure to give notice. Without evidence of impropriety on the part of the agency or evidence of any effort by Adams to rescind his resignation, the AJ concluded that the agency was under no obligation to treat the resignation as other than a voluntary self-initiated action, and thus under no obligation to notify Adams of any appeal rights.
 
 DISCUSSION
 
 7
 We affirm a decision of the Board unless it is found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1994).
 
 
 8
 In 1974-1975, the years when the contested event occurred, an appeal had to be filed within 15 days of the effective date of the agency action. 5 C.F.R. Sec. 752.203(a) (1975).[1] The MSPB became the successor to the Civil Service Commission's appellate functions, and proper recipient of appeals such as Adams'. See 5 U.S.C.A. Sec. 1101 note on Reorganization Plan No. 2 of 1978 (West Supp. 1995). Under the MSPB's own regulations, a petitioner must file an appeal within 20 days after the effective date of the action being appealed. 5 C.F.R. Sec. 1201.22(b). Thus, there is no question that this appeal, filed over nineteen years after the effective date of Adams' resignation, was untimely.
 
 
 9
 However, the Board has discretion to waive the time limit for filing an appeal in the interest of justice after considering all the circumstances in an individual case where a petitioner can show good cause. Shiflett v. United States Postal Serv., 839 F.2d 669, 672 (Fed. Cir. 1988). To establish good cause the petitioner bears the burden to show that he exercised due diligence or ordinary prudence under the particular circumstances of the case. Alonzo v. Department of the Air Force, 4 M.S.P.R. 180, 184 (1980). In Alonzo, the Board set forth the factors it considers in determining whether a petitioner has shown good cause for waiving the time limit: (1) length of delay; (2) whether the petitioner was notified of the time limit or was otherwise aware of it; (3) the existence of circumstances beyond the control of the petitioner which affected his ability to comply with the time limits; (4) the degree to which negligence by petitioner has been shown to be present or absent; (5) circumstances which show than any neglect involved is excusable; and (6) the extent and nature of the prejudice to the agency that would result from waiver of the time limit. Id.
 
 
 10
 Adams argues that he is entitled to a waiver of the time limit for his appeal because the Customs Service at no time advised him of his rights of appeal. However, although we held in Shiflett that an agency's failure to give a removed petitioner notice of his appeal rights constituted good cause, Shiflett does not apply to a voluntarily initiated action. See Clark v. United States Postal Serv., 989 F.2d 1164, 1169 (Fed. Cir. 1993) ("the agency becomes obligated to inform the employee of his appeal rights, only after the employee puts the government on notice that he views his resignation as involuntary"). Resignations are presumed to be voluntary. Cruz v. Department of the Navy, 934 F.2d 1240, 1244 (Fed. Cir. 1991), citing Christie v. United States, 518 F.2d 584, 587, 207 Ct. Cl. 333, 338 (1975).
 
 
 11
 The AJ had ample basis to conclude that Adams had never placed the agency on notice that he considered his action to have been involuntary, thus overcoming the presumption of voluntariness. The AJ found that Adams had shown only that on January 2, 1975, he had a telephone conversation with his supervisor about what he should do; Adams offered no explanation of his activities after the conversation, did not claim he returned to duty, nor contacted the regional personnel office to retrieve his resignation. The AJ also noted that Adams never challenged the resignation when he was re-employed by Customs in October 1975, nor in the 1976 FEAA appeal of his termination from the California position with the Service. Consequently, we cannot conclude that the AJ erred in his conclusion that the agency was under no obligation to notify Adams of appeal rights.
 
 
 12
 Moreover, we cannot conclude that the AJ was arbitrary, capricious, or abused his discretion, or was unsupported by substantial evidence in the record in finding that Adams did not act as a reasonably prudent person in delaying his appeal for nineteen years. Adams did not offer any explanation for his delay. Additionally, we cannot find arbitrary, capricious, or an abuse of discretion the AJ's finding that the agency was prejudiced and could not effectively defend its actions because of Adams' delay. In addition to the death of Curley one month prior to the initiation of Adams' appeal, the difficulties attendant to locating any other witnesses to what occurred over 19 years ago and the inability to locate records are understandable and to be expected.
 
 
 13
 Because the Board's finding that Adams failed to show good cause for his delay of nearly twenty years in filing his appeal was not arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, or unsupported by substantial evidence, and because Adams was not entitled to notice of appeal rights from his resignation which he voluntarily initiated, we affirm.
 
 
 14
 NIES, Circuit Judge, concurs in the result.
 
 
 
 [1]
 Section 752.203 of 5 C.F.R., effective January 1, 1975, provided as follows:
 (a) Time Limit for Appeal. An employee may submit an appeal at any time after receipt of the notice of adverse decision but not later than 15 days after the adverse action has been effected. The Commission may extend the time limit on an appeal to it when the appellant shows that he was not notified of the time limit and was not otherwise aware of it, or that he was prevented by circumstances beyond his control from appealing within the time limit.